Next case on the calendar is United States v. Gamble, and we have Mr. Koch for Mr. Gamble. Yes, good morning, your honor. Good morning, and we have Mr. Silverman for the government. Yes, good morning, your honor. Good morning. All right, Mr. Koch, you have two minutes reserved for rebuttal. Go ahead. Thank you. May it please the court, I'm Theodore Koch for Torrance Gamble. The issue that we bring to the court today is really a request that this court issue a rule that says that in the middle of a rising pandemic, when you have a medically vulnerable inmate, the exhaustion requirement of the compassionate release application should be waived, and the district court should be allowed to weigh in on this before the 30-day period that the statute sets up for the warden of the facility to weigh in. But why do we even get close to that question? Because the court below elaborated why she thought your client didn't meet the 53 factors. The reason is that the exhaustion requirement should be evaluated first. Even if we excuse it, you still lose, unless you can explain to us why her ruling with respect to the statute was wrong, don't you? Well, I think that her ruling with respect to Mr. Gamble was influenced by the fact that she wasn't going to waive exhaustion. How is that? How does that make any sense? She has two issues here. First, there's exhaustion, and I think he hasn't exhausted, and so he should lose anyway. But in the alternative, I also don't think he gets it on the merits, even if I'm wrong about the first thing. How does the exhaustion issue factor into whether he deserves early release on the merits? I think, Your Honor, that we're asking for a clear rule from this court to decide the issue of whether exhaustion should apply. I'm sure many people would appreciate having a clear rule. The question is whether this case requires us to decide a clear rule. If somebody comes along who has a great case on the merits and loses because of the exhaustion issue, then we might have to address the exhaustion issue. I'm not saying that you're going to lose on the merits, but you seem to be resisting even discussing the merits, which is, after all, the whole point here. The whole point is get over the exhaustion hump so that you can then persuade us that your client deserves something on the merits. You don't even want to talk about the merits back with Judge Bryant after a remand on the question of exhaustion. You don't want to talk about it with us because we're not as qualified or because we are more biased against you than Judge Bryant? Judge Bryant already decided the case on the merits. You want to go back to her and argue on the merits because she told you you lose. You're trying to get us to say, well, wow, this guy's got a great claim. Maybe we ought to change the rules about exhaustion or something and deal with the unfairness then. But you'd rather talk with Judge Bryant about the merits than with us? It's just that I'm used to talking about these kinds of factual issues with district court judges, Your Honor. That's all. I'll talk about the merits with you if you like. All three of us have been district court judges, so we're used to hearing lawyers talk that way, and you can just pretend we're still district court judges, and that'll make you more comfortable. Okay. Well, what I would ask any judge is, and the reason why I cited the other case in which Judge Bryant excused exhaustion right, I think it was the day after she decided this case, is because it seemed like the merits of that case impacted the exhaustion analysis is what I'm Yeah, maybe that's right. Maybe the influence runs the other way that a judge is tempted to make a different ruling about exhaustion depending on what the merits of the case is. But anyway, yeah, in the other case, she found that the fellow deserved a reduction. In this case, she didn't. And if you're going to tell me that your case is indistinguishable from that please explain. Well, I think I should just say that I don't think I would have an appeal at all if Judge Bryant had said, I'm going to excuse exhaustion when you lose on the merits. There would be nothing to appeal. Why would there be nothing to appeal? Because there would be no... Because it's so obviously right or because it's so obviously within our discretion on the merits? Well, because the primary thing that I'm appealing is whether it's the exhaustion issue. And I think that her view of the merits was... Her view of exhaustion was impacted by her view of the merits. And what I'd like to... And here's what I'd like to say about the merits of the case, Your Honor. And this is what I think the best, my strongest thing is. Back in March, New York City was the epicenter of the virus. It was clear then and it continues to be clear now that diabetics are vulnerable to death more likely than other people if they get the virus. There will be other pandemics in the future. We're not done with this one yet. There will be other emergencies in the future. And when inmates who are undisputedly vulnerable to whatever is rising need to get a ruling on their merits quickly, the exhaustion requirement But you see, Mr. Koch, now you're back to the exhaustion issue. That's not about the merits of the case. That's about the exhaustion issue. And it's very interesting that you would like us to rule for the benefit of folks in the future. But that's... That there would be an exhaustion... There would be... Exhaustion could be excused. But that's an advisory opinion if it's not necessary for us to reach that issue in this case. Because in this case, what Judge Parker was suggesting is if the ruling on the merits, the alternatives holdings, was so clear that, as you put it, you would have no appeal at all as to whether she exceeded her discretion in that regard, then there is no need for us to address that advisory opinion for cases in the future about exhaustion because this case doesn't require it. It would not be an advisory opinion if what the court wrote was there should be exceptions to exhaustion in pandemics. And we're not sure that you didn't view the merits... View exhaustion through the lens of the merits. And we want you to make a clear ruling about that. And then I would... So now you want us to send it back to her to make a clearer ruling about exhaustion because she didn't... Maybe she didn't really mean it about exhaustion because it was influenced by the fact that your guy doesn't deserve a reduction regardless of exhaustion? Well, to be fair to my guy, we didn't even get a hearing, Your Honor. We didn't get to present any more evidence than what I had submitted. You know, for the last 10 minutes, though, we've been offering to give you your hearing, not an evidentiary hearing, but an opportunity to be heard on the merits. And you have spent the entire time resisting, arguing the merits instead of arguing the merits and telling us what it is that means that the district court exceeded the bounds of its discretion in denying on the merits your client's application. I still don't want to do it. I mean, your time has expired, but I think the presider is still hasn't cut you off yet. You want to talk now about the merits? Well, I have a question on the merits, but I don't even know I need to ask the question. I'm sorry, Your Honor, you do have a question on the merits, but I'm not even sure I need to ask it now because you don't seem to want to engage on the merits. Mr. Gamble, it's not as if she didn't give her reasons on the merits. You know, it'd be a different scenario if she just ruled on exhaustion and or whether or not his diabetes was extraordinary and didn't go to the merits. But she gave a very, I think, detailed ruling on the 3553A factors. Maybe that's why you don't want to watch that. Well, I mean, she did do a very detailed reading of the 3553A factors, and there are bad facts in this case for us on the merits. I think that the ruling that is important here, and I'm repeating myself and I'll stop talking after this, is you have to decide how dangerous this is to the inmate first and whether they can get heard on exhaustion before you turn to the merits. That's all right. Thanks, Mr. Koch. You have two minutes for rebuttal. Mr. Silverman, go ahead. Good morning. May it please the Court. My name is Mark Silverman, and I represent the United States in this appeal. As Your Honors have pointed out, there were three alternative rulings in this case. At the first step of the District Court's analysis, the Court determined that Mr. Gamble had failed to satisfy the exhaustion requirement and that that failure could not be excused. At the second step, the District Court determined that Mr. Gamble had failed to establish extraordinary and compelling reasons for compassionate release. And at the third step, the District Court looked to the 3553A factors and determined that compassionate release was not warranted. In that last step, the District Court went even further and said that compassionate release would actually undermine the goals of the sentence it had imposed just about four months earlier with respect to specific deterrence and protection of the public. I know we don't have to reach this issue, but I just want to make sure, because this has come up in other cases, I'm not sure what the government's position is. I know your position is not exhaustive, but on this issue of extraordinary and compelling, and when an inmate has a condition like diabetes, there seems to be some arguments that are made that if it's under treatment, then the person is not at higher risk for a bad outcome if they contract COVID. And I guess if you're going to decide on that basis, wouldn't at the minimum there need to be some kind of hearing on that? Because it doesn't seem apparent to me that if an inmate has an underlying condition such as diabetes or some high blood pressure, that they are no longer vulnerable to a bad outcome. What's your response to that? Yes, thank you, Your Honor. I think what happened in this case is that the defendant filed his motion for compassionate release and attached zero medical records. The only information the District Court had about his condition of diabetes came from the sentencing. The PSR had noted that the diabetes, as Judge Bianco has pointed out, was under control with medication. It wasn't clear whether Mr. Gamble had type 1 diabetes or type 2 diabetes, and those are treated differently under the current version of the Centers for Disease Control and Prevention's guidance regarding COVID-19. And so I think what happened here was the District Court said, look, this is your burden. You have to, Mr. Gamble, establish extraordinary and compelling reasons. You haven't even tried. You've pointed to this condition, which at the time of sentencing we knew was well under control, and that was just about four months ago. But I understand Your Honor's point, and I'll actually note in its opposition below, the government deferred to the court as to whether the diabetes constituted extraordinary and compelling reasons. The court decided it did not, and now the government is one of the alternative rulings. And what I would say there is just there's a range of permissible decisions. This is an abuse of discretion standard, and the government's view is that in the absence of evidence highlighting the heightened risk to Mr. Gamble based on that diabetes, aside from the general suggestion that those with diabetes face a greater peril from COVID-19, the defendant failed to meet that burden, and the District Court therefore ruled within its Since we're talking about these interesting theoretical issues about how to do this in District Court, something that puzzled me is you structured this as first there's the question of exhaustion, then is there an extraordinary circumstance, and then one considers more or less in a free-floating way whether diabetes, controlled or uncontrolled, is an extraordinary reason, and then you turn to the discretionary factors. But doesn't the statute say that compassionate release or reduction in sentence really can be granted if after considering the 3553a factors, the District Court decides that there is an extraordinary and compelling reason? Isn't that the literal words of the statute? Yes, Your Honor, and so the way I've put it is there, the way I've been thinking about it anyway, is that a court could consider these questions in perhaps the order you're suggesting, Judge Lynch, but if there were no extraordinary and compelling reasons, then there'd be no cause to reach the 3553a. Yeah, I suppose that would be right, that even if, that this statute perhaps does not authorize a court to just say, I'd like to revisit the way I assessed the 3553 factors before, and now I have a different view of it. There's nothing special about this guy. I mean, he just came back and said, could you please reconsider the 3553a factors? Maybe then he would have to lose if whatever excuse he gave for, you know, he gave no excuse or the excuse was totally obviously invalid. But I'm wondering if it isn't the case, really, that how extraordinary the extraordinary has to be depends on the 3553a factors to some degree, that they're really not so easy to disentangle, at least to the point where we should be making some ruling on is uncontrolled, or a judge should enfold diabetes in extraordinary circumstance, totally independent of, you know, considering who is this person? And, you know, is there any reason to reduce his sentence at all? Yes, Your Honor, and I think this court's decision in the Brooker case sort of opens the court's discretion to consider all sorts of factors in its extraordinary and compelling reasons analysis. And I think maybe what you're saying or suggesting, Judge Lynch, is that maybe someone has a really dire health situation, but the 3553a factors still weigh a bit against compassionate release. A judge might balance those two and decide to grant compassionate release. On the other hand, maybe there's a defendant doesn't have much in the way of dire circumstances presented by COVID-19 or health risk factors, but the 3553a factors have really changed. Either the person's become some sort of model inmate, or there's there's something else going on here. He's two months from getting released anyway. And even a modicum of risk of a dire outcome might mean what's the point, really, of making him face that in light of the 3553a factors, and that would be enough to be extraordinary in that case. Now, again, this is all very theoretical because in this case, the judge decided all of these issues against him. And the issue on the 3553a factors seems to be clear enough that there's not even an argument being made that the judge abused her discretion in that regard, at least today. Maybe that's still preserved by the brief or something. So, I mean, this is not the case to disentangle all these things. I just was struck by the fact that the statute is worded in this sort of interesting way. It doesn't say that if there is an extraordinary circumstance, then the judge can reconsider the 3553a factors. I don't know that any great significance should be placed on this, but we live in a textualist world. What it says is, after considering the factors, if the judge finds there's an extraordinary circumstance. Yes, Your Honor. And I think everything you've raised, Judge Lynch, these are really interesting questions. And I think the Brooker decision... I'm so very sorry. Well, but they're not this case. I appreciate what you said about it, and I know the government... I'm not trying to hold the government to anything you said. It was an interesting discussion, but that's really what it is. Absolutely, Your Honor. I guess I'll just close by going back then to the 3553a factors. Here, there were about four months of time that elapsed between the original sentencing and the district court's entry of the compassionate release ruling. On both occasions, Judge Bryant emphasized... So I'm very, very sorry. Thank you. Judge Bryant emphasized Mr. Gamble's extensive criminal history, which placed him in Category 6. The fact that his prior sentences and convictions, including a 10-year sentence, had failed to deter him. The fact that he was in his mid-40s and was still engaging in criminal conduct. And what she described as a cavalier and unapologetic attitude towards his prior firearms conviction, his recent firearms conviction. The district court's analysis on those factors falls well within her discretion. And so there may be interesting questions and some thorny issues that arise with respect to the exhaustion requirement or even the extraordinary compelling reasons analysis. But on this record, it's quite clear that the judge acted well within her discretion on that 3553a piece. And therefore, the government respectfully requests that this court should affirm the compassionate release ruling entered by the district court. Thank you, your honors. Thank you, Mr. Silverman. Mr. Koch, you have two minutes in rebuttal. Thank you. I'd like to try again to reframe this the way your honors would like me to. One of the principles in 3553a is the kinds of sentences available. Mr. Gamble, we suggested to the court, could have been put on some sort of extreme GPS monitoring home incarceration at his mother's house. So that would have been one of the options available to Judge Bryant. Also, in terms of the procedure of this case, I... Before you get to that, Mr. Koch, the district court said Mr. Gamble was ill-suited for home confinement because of his lengthy criminal history and no conditions could adequately protect the public. So, I mean, she overlooked that option. She just thought he's too dangerous. Yes, I remember that. There were no medical records attached because I received, this is in the record, I received a call from the federal defenders of New York in March saying the virus is spreading like wildfire and your client is one of the vulnerable people. Do something. So that's when I talked to Mr. Gamble on the phone. He told me about the prison conditions. They were not good. I said, file a motion with the warden. I'm going to do this and we'll try and get you something to be heard as soon as possible. Because if you catch the virus tomorrow, you could be dead before 30 days is up. That was the thinking. Then, within a district court's discretion, there could be a hearing and medical records take a little while to get. And in the interim, while we file this motion, we can gather the medical records. I could get whatever other evidence I could and present that at a hearing. And we never had the hearing. So that's a little bit why I don't have as much as I could. And finally, it would just be, you know, Mr. Gamble, he had a lot of sympathy going for him that Judge Bryant didn't exactly, she wasn't exactly persuaded by, but he had a lifetime of addiction. His son had been murdered not too long ago. And those are, you know, part of the whole 3553A factors. All right. Thank you very much, Mr. Koch and Mr. Silverman. We'll reserve the decision. Have a good day. Thank you, Your Honor.